# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 6, 2026        Decided August 14, 2026

No. 25-5367

SZ DJI TECHNOLOGY CO., LTD. AND SZ DJI BAIWANG
TECHNOLOGY CO., LTD.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF DEFENSE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:24-cv-02970)

———

*Derek L. Shaffer* argued the cause for appellants. With
him on the briefs was *Alexander J. Van Dyke*.

*Urja Mittal*, Attorney, U.S. Department of Justice, argued
the cause for appellees. With her on the brief were *Brett A.
Shumate*, Assistant Attorney General, and *Sharon Swingle*,
Attorney.

Before: SRINIVASAN, *Chief Judge*, WILKINS and GARCIA,
*Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*: Congress directed the Secretary of Defense to annually publish a list identifying all "Chinese military companies" operating in the United States. The Secretary has repeatedly included DJI—a drone manufacturer—on that list. DJI sued, arguing that the Secretary's designation violated its due process rights, lacked evidentiary support, and was inadequately explained. The district court granted summary judgment against DJI. We affirm in part, reverse in part, and remand for further proceedings.

**I**

**A**

Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 requires the Secretary of Defense to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company." Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 (2021) (codified at 10 U.S.C. § 113 note). Every year, the Secretary "shall submit to" Congress "a list of each entity" he identifies as a "Chinese military company" operating in the United States. § 1260H(b)(1). "Concurrent" with submitting the list, the Secretary "shall publish the unclassified portion of such list in the Federal Register." § 1260H(b)(2)(A).[1]

Section 1260H defines "Chinese military company" to include several categories of entities. One such category encompasses any company "identified as a military-civil fusion contributor to the Chinese defense industrial base."

---

[1] Unless otherwise specified, citations to § 1260H are to the version in effect on the date of publication of this opinion.

§ 1260H(g)(2)(B)(i)(II). The statute in turn defines the term "military-civil fusion contributor" to include "[e]ntities knowingly receiving assistance from the Government of China" through "science and technology efforts initiated" by "the Chinese military industrial planning apparatus." § 1260H(g)(3)(A).

In 2024, Congress amended Section 1260H. Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2123–26 (2024). The 2024 amendments expanded the definition of "military-civil fusion contributor" to cover, among others, entities "affiliated with" the "State-Owned Assets Supervision and Administration Commission of the State Council" or the "People's Liberation Army," as well as entities "select[ed] or designat[ed]" by the Chinese government "as a 'Single Champion.'" *Id.* at 2124– 25 (§ 1260H(g)(3)). The 2024 amendments also required that the Section 1260H list set out "for each entity included in the unclassified portion of [the 1260H] list, the justification for inclusion in such list." *Id.* at 2123 (§ 1260H(b)(2)(B)). Finally, the 2024 amendments provided that "[i]n any judicial review of a determination made under [Section 1260H], if the determination was based on classified information," such "information may be submitted to the reviewing court ex parte and in camera." *Id.* at 2126 (§ 1260H(f)).

A company's inclusion on the Section 1260H list triggers several consequences. A listed company cannot contract with the Department of Defense or the Department of Homeland Security. *See* Pub. L. No. 118-31, § 805(a)(1), 137 Stat. 136, 315–16 (2023); Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 (2024). It also cannot receive certain "grant[s]," "contract[s]," and "loan[s]" from the Department of Energy. 42 U.S.C. § 18912(a)(2), (a)(3)(B), (c)(1). And because "the unclassified portion of [the 1260H] list" is "publish[ed] . . . in the Federal Register," § 1260H(b)(2)(A), inclusion on the list "can be a blow to designated companies' reputations," Idrees Ali,

Alexandra Alper & Michael Martina, *Pentagon Calls Out Chinese Companies It Says Are Helping Beijing's Military*, Reuters (Feb. 1, 2024), https://perma.cc/GK6P-XQSE.

**B**

SZ DJI Technology Co., Ltd. and its subsidiary SZ DJI Baiwang Technology Co., Ltd. (together, DJI) manufacture consumer and commercial drones. DJI's drones are available through retailers worldwide. Its customers range from governments to businesses to hobbyists.

In October 2022, the Secretary of Defense listed DJI as a Chinese military company without advance notice. DJI then petitioned the Secretary for delisting. The Secretary denied the petition and, in January 2024, redesignated DJI as a Chinese military company, again without advance notice.

In October 2024, DJI challenged the Secretary's January 2024 designation in district court under the Fifth Amendment's Due Process Clause and the Administrative Procedure Act. While that challenge was pending, the Secretary published his January 2025 list, which again included DJI, again without advance notice. Although the published list gave no rationale for DJI's designation, the Secretary provided DJI with a report dated December 6, 2024, explaining the designation.

The Secretary's report concludes, in relevant part, that DJI is a "military-civil fusion contributor to the Chinese defense industrial base" because it "contributes to the Chinese defense industrial base" and is "knowingly receiving assistance from the Government of China through science and technology efforts initiated under the Chinese military industrial planning apparatus." J.A. 273–76 (cleaned up). The Secretary redacted the entire explanation for his conclusion that "DJI contributes to the Chinese defense industrial base." J.A. 273–74. He also redacted part of the explanation for the conclusion that DJI is

"knowingly receiving assistance from the Government of China through science and technology efforts initiated under the Chinese military industrial planning apparatus." J.A. 275–76. The unredacted portion of the Secretary's explanation states that DJI is "knowingly receiving [such] assistance" because "[i]n 2021, the National Development and Reform Commission," which "connects to China's Central Military Commission," recognized "DJI as a National Enterprise Technology Center (NETC)." J.A. 275 (citation omitted). Per the Secretary, DJI "benefits from the NETC qualification through tax breaks, free cash subsidies, and financial support from state-owned capital funds." J.A. 276 (citation omitted).[2]

In March 2025, DJI amended its complaint to challenge the January 2025 designation. The Secretary included the redacted report as part of the administrative record and filed the unredacted version ex parte and in camera. The district court granted summary judgment against DJI. In doing so, the court relied only on the unclassified record and found no need to examine the unredacted version of the Secretary's report.

DJI appealed. In June 2026, several months after we heard oral argument, the Secretary informed us that he had published a new Section 1260H list, which again included DJI. The new list—subject to the requirement that it "shall include" the "justification for [each entity's] inclusion," § 1260H(b)(2)(B)—states the reasons for listing DJI as follows:

> DJI is indirectly affiliated with [the State-Owned Assets Supervision and Administration

---

[2] In the report, the Secretary relied on the version of Section 1260H in effect before the 2024 amendments. The parties agree that reliance was harmless and we proceed on that assumption. *See* Appellants' Brief 8 n.1; Appellees' Brief 18.

Commission of the State Council] and is directly affiliated with [the Chinese Ministry of Industry and Information Technology] and the People's Armed Police (PAP) (Section 1260H(g)(2)(B)(i)(I)). DJI is a military-civil fusion contributor to the Chinese defense industrial base because it knowingly received assistance from the Government of China through science, technology, research, and industrial efforts initiated, granted, or created by, or provided under, or related to, the Chinese military industrial planning apparatus, or in furtherance of Chinese military industrial planning objectives through multiple designations, such as a "Single Champion" designation; it is affiliated with [the Chinese Ministry of Industry and Information Technology], and it resides in or is affiliated with a military-civil fusion enterprise zone (Sections 1260H(g)(3)(A), (g)(3)(B)(i), and (g)(3)(E)).

Notice of Availability of Designation of Chinese Military Companies, 91 Fed. Reg. 35,189, 35,193 (June 10, 2026).

## II

We begin by addressing our jurisdiction.

The June 2026 list, which supplies new reasons for DJI's designation, raises the question whether DJI's challenge to the January 2025 designation is moot. Although the Secretary notified us of the June 2026 list's publication, he has not suggested that it moots this case. So he, "of course," has not "carried [the] heavy burden" of establishing mootness. *Trump v. Mazars USA, LLP*, 39 F.4th 774, 785 (D.C. Cir. 2022).

But mindful of our "'independent obligation' to ensure that appeals before us are not moot," *id.* (quoting *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019)), we elaborate on why, on this record, the case is not moot.

A case becomes moot—and thus no longer a justiciable "Case" or "Controversy," U.S. Const. art. III, § 2, cl. 1—"only when it is *impossible* for a court to grant any effectual relief." *Maldonado v. District of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) (quotation marks omitted). The current record does not support that conclusion. For example, because it is plausible that each annual designation has distinct reputational impact, it is not clear from the record that the January 2025 list has "expired" and has "no continuing effect" once the June 2026 list was published. *Cf. Am. Forest Res. Council v. Williams*, 96 F.4th 417, 421 (D.C. Cir. 2024). It is also not obvious that there is no "reasonable expectation that" DJI will "be subject to the same [challenged] action again"—that is, a designation resting entirely on the same explanations DJI challenges as unlawful or accompanied by the same asserted due-process deficiencies. *Honeywell Int'l, Inc. v. NRC*, 628 F.3d 568, 576 (D.C. Cir. 2010) (capable-of-repetition-yet-evading-review exception). The June 2026 list includes some new rationales for redesignating DJI—such as DJI's selection as a "Single Champion," 91 Fed. Reg. at 35,193 (citing § 1260H(g)(3)(A))—but it is unclear whether those are factually supported and independently sufficient to sustain DJI's designation.

In short, "[o]n the present record, this case is not moot." *Almaqrami v. Pompeo*, 933 F.3d 774, 784 (D.C. Cir. 2019). We express no view, however, on whether the parties may establish mootness in further proceedings.

**III**

Having found no jurisdictional barrier, we now turn to the merits of DJI's appeal. We review the district court's grant of summary judgment *de novo*, "as if the agency's decision had been appealed to this court directly." *Gerber v. Norton*, 294 F.3d 173, 178 (D.C. Cir. 2002) (quotation marks omitted). We "will uphold agency findings that are supported by substantial evidence, even if we might have reached a different conclusion in the first instance." *Epsilon Elecs., Inc. v. OFAC*, 857 F.3d 913, 918 (D.C. Cir. 2017). Substantial evidence "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Accordingly, the "threshold for such evidentiary sufficiency is not high," *id.*, and review for substantial evidence is "highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008).

DJI challenges the January 2025 designation on four grounds. First, it argues that the Secretary denied it due process by failing to afford it any notice or process before making the designation. Second, DJI argues that the unclassified record lacks substantial evidence supporting the finding that DJI is "receiving assistance" from the Chinese government through science and technology efforts initiated by the Chinese military industrial planning apparatus. Third, DJI argues that the Secretary failed to explain why he treated DJI differently from other companies that DJI believes are similarly situated. Finally, DJI argues that the district court erred by concluding that the unclassified record supports the Secretary's finding that DJI "contributes" to the Chinese defense industrial base.

We reject DJI's first three arguments but find its fourth meritorious.

9

**A**

We begin with DJI's due process claim.  DJI argues that the Secretary denied it due process by designating it a Chinese military company without advance notice.  But here, due process requirements do not "apply in the first place," *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571 (1972), because DJI has failed to show that it "has been deprived of a protected interest in 'property' or 'liberty,'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

DJI asserts a protected interest under the "stigma-plus" doctrine.  Our cases recognize "two ways" that government action can inflict a qualifying stigma-plus injury:  (1) by "formally or automatically exclud[ing] [the plaintiff] from work on some category of future [government] contracts"; or (2) by "ha[ving] the broad effect of largely precluding [the plaintiff] from pursuing her chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994); *see also Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 121 (D.C. Cir. 2010).

DJI invokes only the latter theory in this appeal.  It argues that the government has imposed on DJI a stigma "so severe that it broadly precludes [DJI] from pursuing a chosen trade or business." Appellants' Brief 46 (quoting *Gen. Elec.*, 610 F.3d at 121).  DJI "ma[kes] no arguments" about "[t]he former type of claim," despite having mentioned its statutory ineligibility to contract with the Department of Defense.  *McKinney v. District of Columbia*, 142 F.4th 784, 795 (D.C. Cir. 2025); *see also* Appellants' Brief 46 (stating only that a stigma-plus interest "is found where plaintiffs show, in addition to reputational harm, that . . . the government imposed stigma is so severe that it broadly precludes plaintiffs from pursuing a chosen trade or business" (quotation marks omitted) (ellipsis in original)).  DJI has thus forfeited any argument based on the automatic-exclusion theory.  *See McKinney*, 142 F.4th at 795

& n.6 (plaintiff did not preserve automatic-exclusion argument by merely stating that he "was completely precluded from obtaining any teaching position in any public school in the District"); *see also Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly.").

Under the theory DJI does invoke, DJI must show that its designation has "broadly preclude[d]" it from pursuing its chosen business. *Gen. Elec.*, 610 F.3d at 121. We have found that standard satisfied where, for example, the government's determination that a dairy company "lacked integrity" "effectively put" the company "out of business": "Almost one hundred percent of [the company's] operation [wa]s directed at obtaining Government contracts," and the government's determination "would likely continue to be communicated every time [the company] bid for a contract." *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 956, 963 (D.C. Cir. 1980); *see also Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) (plaintiff "must show that the government has seriously affected, if not destroyed, [its] ability to obtain employment [or contracts] in [its] field" (quotation marks omitted)).

Measured against that standard, DJI's evidence comes up short. DJI points to several consequences that allegedly followed its Chinese military company designation: "[O]ne of DJI's largest U.S. contractors" and "[a]nother major client" ceased purchasing from DJI; "[a] number of states" have banned state agencies from using DJI drones; and the Department of Defense is prohibited from using or procuring DJI products. Appellants' Brief 47 & n.6 (citations omitted).

These alleged consequences may show that DJI's Chinese military company designation has cost it *some* business opportunities. But that is not enough. DJI sells drones to

consumers, companies, and governments worldwide. Am. Compl. ¶¶ 20–35. And, by its own account, DJI remains the market leader despite having been designated a Chinese military company for several years before it filed suit. *See id.* ¶¶ 20, 25; *accord* David Lin, Senior Dir. for Future Tech. Platforms, Special Competitive Stud. Project, *Testimony Before the U.S.-China Economic and Security Review Commission* 3 (Feb. 6, 2025), https://perma.cc/5JM5-X3X9 ("DJI holds 90% of the global consumer market and nearly 70% of the drone sector writ-large."). Whatever proportion of its business a company must lose before it is "broadly preclude[d]" from pursuing its chosen business, *Gen. Elec.*, 610 F.3d at 121, DJI's alleged losses fall well short.

**B**

Next, DJI argues that no substantial evidence supports the Secretary's conclusion that it is "knowingly receiving assistance from the Government of China" through "science and technology efforts initiated" by "the Chinese military industrial planning apparatus." § 1260H(g)(3)(A). We disagree.

The unredacted portion of the Secretary's report explains that DJI has been recognized as a "National Enterprise Technology Center (NETC)" by China's "National Development and Reform Commission." J.A. 275. The report elaborates that the National Development and Reform Commission is "an organ of the [Chinese] military industrial planning apparatus" that "serves as the economic planning organization" for "the National Defense Mobilization Commission[]" and "connects to China's Central Military Commission." *Id.*; *see also* J.A. 657, 666 (cited support for those statements). DJI does not dispute that description of the National Development and Reform Commission.

The report next states that "DJI benefits from its NETC qualification through tax breaks, free cash subsidies, and financial support from state-owned capital funds." J.A. 276. This is the conclusion DJI disputes. The report cites a news article stating that in December 2020 the National Development and Reform Commission "successfully recognized" DJI as one of 1,636 "National Enterprise Technology Centers." J.A. 649. The article further reports that "[t]he National Enterprise Technology Center enjoys many policy benefits, including free cash subsidies of up to 5 million to 15 million yuan from various provinces and cities, special financial support . . . from the Ministry of Science and Technology, the National Development and Reform Commission, and state owned capital industry upgrading funds, as well as a large number of tax benefits." J.A. 649. It then reports that DJI has applied for and received numerous other policy subsidies unrelated to its NETC recognition. J.A. 651–55.

DJI does not dispute that it received NETC recognition from an agency in China's military planning apparatus or that the NETC recognition made it eligible for many attractive subsidies and benefits. It argues only that the cited article does not sufficiently support the Secretary's conclusion that DJI is *currently* receiving the benefits made available by its NETC recognition. Appellants' Brief 31. But it was reasonable for the Secretary to draw that inference, and we give "substantial deference to inferences drawn by the [agency] from the factual record." *McLamb v. NLRB*, 141 F.4th 1308, 1315 (D.C. Cir. 2025).

The article states that "[t]he NETC enjoys many policy benefits," not that the NETC enjoys *eligibility* for such benefits. J.A. 649. That language naturally suggests that DJI is currently receiving policy benefits. The nature of the benefits reinforces that inference. For example, the article

states that the NETC enjoys "preferential tax rates" for "imported equipment," J.A. 649, a benefit companies would generally be expected to use if available. The article's pages-long discussion of DJI's history of seeking and receiving subsidies from various other Chinese governmental entities also supports the Secretary's inference. J.A. 651–55. Nothing in the record, moreover, suggests that either the NETC recognition or the accompanying benefits are time limited.

DJI also asserts in its brief that, as a factual matter, "DJI has never received any assistance from the government through its NETC recognition." Appellants' Brief 31. That self-serving assertion by counsel cannot rebut the substantial evidence on which the Secretary rested his finding.

## C

Next, DJI argues that the Secretary acted arbitrarily by failing to explain why he did not list other companies that DJI alleges are also NETCs and make products with military applications—namely, Nokia Bell, Volkswagen, and Nissan. We reject this argument as well.

As a threshold matter, DJI improperly assumes facts not in the administrative record about the other companies' activities and products, about whether those companies meet Section 1260H's definition of a Chinese military company, and about whether those companies are otherwise similarly situated to DJI with respect to the statutory criteria.

Even accepting DJI's factual assertions at face value, its argument is meritless. DJI relies on cases holding that agencies acted arbitrarily when they took action as to each of multiple similarly situated entities but treated them differently without adequately explaining why. *See* Appellants' Brief 41–42. For example, in one case, the SEC had recently approved the listing of two bitcoin products but rejected a proposal to list a third,

seemingly similar product without distinguishing the prior approvals. *See Grayscale Invs., LLC v. SEC*, 82 F.4th 1239, 1251–52 (D.C. Cir. 2023). In another, a public utility proposing a new rate argued that the Federal Energy Regulatory Commission had not explained why it had treated other utilities' proposals more favorably in "prior orders." *Balt. Gas & Elec. Co. v. FERC*, 954 F.3d 279, 284–85 (D.C. Cir. 2020). As we recently explained, these cases establish that "[a]n agency acts unreasonably when it deviates from *prior positions* in similar situations." *Vanda Pharms., Inc. v. FDA*, 123 F.4th 513, 525 (D.C. Cir. 2024), *cert. denied*, 146 S. Ct. 605 (2025) (emphasis added) (quotation marks omitted).

Here, by contrast, there is no suggestion that the Secretary has considered—much less deliberately taken a "prior position[]" not to list—the handful of companies DJI identifies in its briefing. *Id.* The implication of DJI's argument is that the Secretary cannot designate *any* company without first scouring the earth for every other potentially similarly situated company, investigating each company sufficiently to reach an informed decision, and then explaining any seemingly differing treatment. DJI offers no support for requiring such a resource-intensive all-or-nothing approach in this context.

**D**

Finally, DJI argues that the district court erred by relying only on the unclassified record to uphold the Secretary's conclusion that DJI "contributes" to the Chinese defense industrial base. On this point, we agree with DJI.

As a threshold matter, Section 1260H defines "Chinese military company" to include companies "identified as a military-civil fusion contributor to the Chinese defense industrial base." § 1260H(g)(2)(B)(i)(II). It then defines the entire phrase "military-civil fusion contributor" to include any entity that meets one of several criteria in Subsection (g)(3) of

the statute. § 1260H(g)(3). That the statute defines the entire phrase "military-civil fusion contributor" raises the question whether the statute imposes a separate requirement that the company "contribute" to the Chinese defense industrial base, or instead automatically renders any company that fits one of the criteria in Subsection (g)(3) a "contributor." *See Hesai Tech. Co. v. Dep't of Def.*, 792 F. Supp. 3d 22, 37–38 (D.D.C. 2025) (considering but rejecting the argument that there is no separate contribution requirement). But because the parties in this case agree that the statute imposes a distinct contribution requirement, we assume without deciding that the Secretary had to make that finding. *See* Appellants' Brief 33–34; Appellees' Brief 31–32; J.A. 273–74.

On that assumption, the district court's analysis cannot stand. The Secretary's report contained a section titled "DJI Contributes to the Chinese Defense Industrial Base," but every word of that section except for the heading was redacted in the unclassified record. J.A. 273–74. There is, in other words, no publicly stated rationale for why the Secretary believes DJI contributes to the Chinese defense industrial base.

Rather than examine the Secretary's classified basis for that finding, the district court relied on arguments in the Secretary's briefing and information drawn from other sections of the report to find that DJI's operations satisfied the court's definition of "contribut[e]." *SZ DJI Tech. Co. v. Dep't of Def.*, 2025 WL 2761210, at *16–17 (D.D.C. Sept. 26, 2025). That approach is a straightforward violation of the *Chenery* principle: Courts "must judge the propriety of [agency] action solely by the grounds invoked by the agency." *Calcutt v. FDIC*, 598 U.S. 623, 624 (2023) (per curiam) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). That principle applies in several contexts, including where, as here, the court is reviewing a "factual determination" that "the agency alone is authorized to make." *Canonsburg Gen. Hosp. v. Burwell*,

807 F.3d 295, 304 (D.C. Cir. 2015) (cleaned up). And this statute directs the Secretary to "identify each entity *the Secretary determines*" is a Chinese military company operating in the United States. § 1260H(a) (emphasis added).

The Secretary does not suggest that any exception to *Chenery* could apply here. He instead argues that evidence elsewhere in the unclassified record could support a conclusion that DJI contributes to the Chinese defense industrial base in the requisite sense. Appellees' Brief 28–30. But that is no answer at all: It is exactly the type of post hoc argument the *Chenery* principle prohibits. Imagine, for example, that in the redacted portion of the report, the agency's rationale had nothing at all to do with the facts that the Secretary's attorneys now highlight in court. As things stand, we do not know whether the Secretary considered any of that evidence, much less why he believed the evidence supported his determination, and we are "powerless" to supply those rationales when the agency did not. *Calcutt*, 598 U.S. at 629.

The Secretary separately urges us to examine the classified record in the first instance. But we find it appropriate to follow "our general practice" and remand the issue to the district court: "[W]e are a court of review, not of first view." *Bauer v. FDIC*, 38 F.4th 1114, 1126 (D.C. Cir. 2022) (quotation marks omitted). On remand, the district court may examine the classified record and determine whether to uphold the Secretary's determination that DJI "contribut[es]" to the Chinese defense industrial base. § 1260H(g)(2)(B)(i)(II). And the district court is free to assess in the first instance whether and to what extent DJI or its counsel may receive some form of access to the classified record.

**IV**

The district court's grant of summary judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*